## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

HARRY HILL,
*On behalf of himself and all others similarly situated*,

      Plaintiff,

      v.

B. FRANK JOY, LLC,

      Defendant.

Civil Action No. TDC-15-1120

## MEMORANDUM OPINION

Plaintiff Harry Hill has filed suit against Defendant B. Frank Joy, LLC ("B. Frank Joy"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19 (2012); the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509 (2016); and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-431. Pending before the Court is B. Frank Joy's Motion for Summary Judgment. The Motion is fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED.

## BACKGROUND

The following facts are presented in the light most favorable to Hill, the nonmoving party:

## I.    Hill's Employment

B. Frank Joy is a construction company that works in Maryland, Virginia, and the District of Columbia.  From May 5, 2014 to August 28, 2014, B. Frank Joy employed Hill as a driver. Hill drove dump trucks carrying equipment, materials, and workers from B. Frank Joy's construction yard in Hyattsville, Maryland to various job sites in the Washington, D.C. region. About 70 percent of Hill's trips were to and from job sites in the District of Columbia.  B. Frank Joy usually required Hill to leave the construction yard with his cargo by 7:30 a.m. and to arrive at that facility up to one hour before that departure time.  Before leaving, Hill and his co-workers would spend between 15 and 90 minutes loading the dump truck, attending meetings, and performing other tasks.  Upon returning to the yard at the end of the day, they would spend 15 to 45 minutes unloading the truck.

According to Hill, B. Frank Joy owns approximately 45 trucks.  About 15 are dump trucks, each with a Gross Vehicle Weight Rating and unladen weight in excess of 10,000 pounds. Most of the remaining vehicles are pickup trucks and vans, which weigh less than 10,000 pounds.  Hill possesses a Maryland Class A commercial driver's license, which authorizes him to drive vehicles weighing more than 10,000 pounds.  B. Frank Joy's records show that Hill drove three different dump trucks over the course of his employment.  Those records contain no indication that he ever drove a pickup truck or van.  Hill does not claim to have driven a pickup truck or van for B. Frank Joy.  Instead, he asserts that operating pickup trucks and vans was among his potential duties as a B. Frank Joy driver and that every B. Frank Joy driver is required to drive all of B. Frank Joy's vehicles "at some point."  Pl.'s Resp. Mot. Summ. J. ("Resp.") Ex. A, Hill Decl. ¶ 9.

B. Frank Joy paid Hill $18 per hour.  Hill claims that B. Frank Joy did not compensate him for time spent loading and unloading dump trucks at the beginning and end of each workday and that B. Frank Joy often only paid drivers for an hour of driving time each day, even though it often took longer to travel between the yard and job sites.  Hill asserts that construction workers and laborers were not paid for loading, unloading, or any travel time.  He also complains that B. Frank Joy did not record employees' work time accurately.  Instead of using timecards, foremen would report employees' work time, even though foremen were often not present for the entire workday.  B. Frank Joy also had a policy of rounding employees' work time down to the nearest half hour.  In addition, although Hill received some overtime pay, he asserts that he was not paid all of the overtime to which he was entitled.

## II.    Procedural History

On April 20, 2015, Hill filed a two-count Complaint, alleging in Count I that B. Frank Joy failed to pay Hill and a class of B. Frank Joy drivers, construction workers, and laborers regular and overtime wages owed under the FLSA, and in Count II that B. Frank Joy failed to pay regular wages under the MWPCL and overtime wages under the MWHL.[1]  On June 9, 2015, B. Frank Joy submitted an Answer.  On September 3, 2015, at the parties' behest, the Court issued a Revised Scheduling Order bifurcating this case into two phases.  During the first phase, of which the pending Motion is a part, the parties are addressing FLSA collective action and Federal Rule of Civil Procedure 23 class certification issues as well as the merits of Hill's individual claims.  The second phase, if necessary, will involve post-certification, class-related fact and expert discovery.

---

[1]    Although the heading to Count II references only the MWPCL, the allegations that follow make clear that Hill is alleging an MWPCL claim for unpaid straight-time wages and an MWHL claim for unpaid overtime wages.  *See* Am. Compl. ¶¶ 62-65.

On January 28, 2016, Hill filed an Amended Complaint.  The Amended Complaint added allegations that B. Frank Joy's method for rounding employees' work time denied employees compensation to which they were entitled by statute.  On February 11, 2016, B. Frank Joy submitted an Amended Answer.  On February 23, 2016, B. Frank Joy filed a Motion for Summary Judgment.  On April 19, 2016, Hill submitted a Response to the Motion.  On May 9, 2016, B. Frank Joy filed a Reply memorandum.

## DISCUSSION

In its Motion for Summary Judgment under Federal Rule of Civil Procedure 56, B. Frank Joy argues that it was not required to pay Hill overtime because he was subject to the Motor Carrier Act exception to the overtime provisions of the FLSA and the MWHL.  B. Frank Joy also asserts that it is entitled to summary judgment on Hill's FLSA claim because his pay was above the minimum wage.  Hill contends that he is entitled to overtime pay.  Although he concedes that his pay exceeded the minimum wage, he argues that the FLSA and the MWPCL still entitle him to compensation for all hours worked.  Hill further asserts that he has a claim for unpaid wages under the District of Columbia Minimum Wage Act ("DCMWA"), D.C. Code §§ 32-1001 to 32-1015 (2016), such that if the Court rejects his individual claims, he should be allowed to substitute another individual as the named plaintiff or amend his pleading to add the DCMWA claim.

## I.    Legal Standard

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In assessing the Motion, the Court views the facts in the light

most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    Overtime Claims

With some exceptions, the FLSA requires employers to pay employees one-and-a-half times their regular pay rate for time worked in excess of 40 hours during a week. 29 U.S.C. § 207(a)(1). One exception to the FLSA's overtime pay requirement, known as the Motor Carrier Act exception, applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." *Id.* § 213(b)(1). The MWHL, which generally requires that "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage," contains a similar exception. Md. Code Ann., Lab. & Empl. § 3-415(a), (c)(1); *Veney v. John W. Clarke, Inc.*, 28 F. Supp. 3d 435, 441 (D. Md. 2014). Such exemptions are construed narrowly against employers. *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996).

Under 49 U.S.C. § 31502, the Secretary of Transportation's authority to set qualifications and maximum hours extends to employees of "motor carriers" and "motor private carriers"

operating in interstate commerce whose work affects the safety of operation of those carriers.[2] 49 U.S.C. § 31502(b) (2012); *Morris v. McComb*, 332 U.S. 422, 433, 437-38 (1947); *Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1106-07 (4th Cir. 1997). Consequently, a truck driver who transports goods across state lines falls within the Secretary of Transportation's jurisdiction and is not entitled to overtime under the FLSA or MWHL, even if that employee also drives intrastate routes. *Morris*, 332 U.S. at 423-24; *see also Levinson v. Spector Motor Serv.*, 330 U.S. 649, 678 (1947) (noting that a truck driver's work "obviously and dramatically affects the safety of operation of the carrier during every moment that he is driving"); 29 C.F.R. § 782.2(b)(2) (2016).

Hill was a truck driver who frequently shuttled equipment, materials, and employees between Maryland and the District of Columbia. This undisputed fact does not end the matter, though, because Hill argues that he qualifies for an exception to the Motor Carrier Act exception. The SAFTEA-LU Technical Corrections Act of 2008 ("Technical Corrections Act"), Pub. L. 110-244 § 306, 122 Stat. 1572, 1620 (2008), relaxed the "strict separation between the Secretary of Transportation's jurisdiction and the ambit of the Fair Labor Standards Act overtime guarantee," *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 171-72 (3d Cir. 2015), by establishing that the FLSA overtime pay requirement applies to any "covered employee" defined as an individual:

(1) who is employed by a motor carrier or motor private carrier . . . ;

(2) whose work, in whole or in part, is defined—

---

[2]    The term "motor carrier" includes a company "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The term "motor private carrier" includes a company "transporting property by motor vehicle" in interstate commerce when the company is "the owner, lessee, or bailee of the property being transported" and "the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." *Id.* § 13102(15); *Veney*, 28 F. Supp. 3d at 441.

       (A) as that of a driver, driver's helper, loader, or mechanic; and

       (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . ;[3] and

(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

Technical Corrections Act § 306(c).

      B. Frank Joy argues that Hill is not a "covered employee" within the meaning of the Technical Corrections Act because he did not drive any vehicle weighing 10,000 pounds or less. Hill responds that the record does not contain evidence of that fact and that he is entitled to discovery on the issue. He also argues that there is a genuine dispute of material fact as to the applicability of the Motor Carrier Act exception because B. Frank Joy's vehicle fleet includes trucks under 10,000 pounds, so B. Frank Joy could have called upon him to drive those lighter trucks.

### A.      Request for Discovery

      As a preliminary matter, Hill asserts that the Court should not grant summary judgment before he has the opportunity for discovery. Although a party may move for summary judgment before the commencement of discovery, *see* Fed. R. Civ. P. 56(b), summary judgment is generally denied "when the nonmoving party 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2015) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). Under such circumstances, the proper procedure is for the nonmoving party to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) explaining why, "for specified reasons," the party needs

---

[3]  Section 306(c)(2)(B) identifies three categories of vehicles weighing less than 10,000 pounds that remain subject to the Motor Carrier Act exception, none of which applies to this case.

discovery to oppose the summary judgment motion.  Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).  Although the nonmoving party's failure to file a Rule 56(d) affidavit is a sufficient reason to refuse to defer ruling on a pre-discovery motion for summary judgment, the Court may still consider a request for discovery presented in the nonmovant's memorandum of law opposing summary judgment.  *Harrods Ltd.*, 302 F.3d at 244-45.  A court may deny a request for discovery pursuant to Rule 56(d) "when the information sought would not by itself create a genuine issue of material fact" sufficient to preclude summary judgment.  *Pisano*, 743 F.3d at 931.

Hill did not file a Rule 56(d) affidavit.  Hill's Response claims that B. Frank Joy's Motion is premature, but it does not clearly identify the information he would seek through discovery or the reasons why he needs discovery to obtain it.  To the extent that Hill requests discovery to determine whether he drove vehicles lighter than 10,000 pounds, he does not explain his apparent ignorance regarding the type of vehicles he drove.  Hill worked for B. Frank Joy for less than four months.  He should know whether he drove dump trucks exclusively or whether he also drove lighter vehicles, such as pickup trucks or vans.  Having failed to even assert that he drove lighter vehicles, *see infra* part II.B, Hill cannot claim that discovery will uncover records or other evidence to show that he did.  Because Hill has not shown how discovery is necessary to his opposition to B. Frank Joy's Motion, the request for discovery is denied.

### B.    Applicability of the Motor Carrier Act Exception

In disputing B. Frank Joy's assertion that he is not entitled to FLSA overtime pay as a result of the Motor Carrier Act exception, Hill argues that he is a covered employee within the meaning of the Technical Corrections Act and thus entitled to such pay.  First, he asserts that

there is a dispute of material fact as to whether he drove trucks weighing less than 10,000 pounds.  The record does not bear out this assertion.  B. Frank Joy submitted the declaration of a company employee who dispatched and supervised dump truck drivers during Hill's time at B. Frank Joy.  The declaration states that Hill drove three different dump trucks and attaches a log of drivers' work assignments between May 7, 2014 and August 31, 2014, a period covering all but the first two days of Hill's employment.  For each workday, the log records which employees drove dump trucks and which employees drove compressor trucks or pickup trucks.  Although the log lists Hill as driving dump trucks on several days, it does not list him as ever driving a compressor truck or pickup truck.  Significantly, Hill does not contend that the log is inaccurate, nor does he claim to have ever driven any type of vehicle other than a dump truck.  Having failed to rebut B. Frank Joy's evidence that Hill drove only dump trucks, there is no genuine dispute of material fact on this issue.

Next, Hill argues that he eventually would have driven a truck weighing 10,000 pounds or less because B. Frank Joy's drivers are required to drive all of B. Frank Joy's vehicles "at some point."  Hill Decl. ¶ 9.  Even if true, this fact does not make Hill a covered employee under the Technical Corrections Act.  As noted above, the Technical Corrections Act establishes several components to the definition of a covered employee:  (1) the individual must be employed by a motor carrier or motor private carrier; (2) the employee's work must be defined in whole or in part as that of a driver or other qualifying class of work; (3) the work must be defined in whole or in part as affecting the safety of operation in interstate commerce of motor vehicles weighing 10,000 pounds or less; and (4) the employee is an "individual . . . who performs duties on motor vehicles weighing 10,000 pounds or less."  Technical Corrections Act § 306(c).  The parties do not dispute that B. Frank Joy is a motor carrier or motor private carrier,

that Hill worked as a driver, or that he drove in interstate commerce.  Hill also appears to have demonstrated that his work was defined in whole or in part as a driver of light trucks.  Hill asserts that B. Frank Joy drivers with Class A licenses, including him, could be instructed to drive not only dump trucks, but also pickup trucks and vans weighing less than 10,000 pounds. He also submitted a recent advertisement for a job as a B. Frank Joy dump truck driver indicating that the duties of the position include driving both dump trucks and pickup trucks.

But the plain language of the Technical Corrections Act also establishes that to qualify as a "covered employee," an individual must be one who "performs duties on motor vehicles weighing 10,000 pounds or less." *Id.*  Hill did not.  During his approximately four months at B. Frank Joy, Hill drove dump trucks exclusively.  To conclude that the possibility or even likelihood that Hill might have been called upon to drive light trucks would make him a "covered employee" cannot be squared with the text of the statute, because the requirement is that the employee "performs duties on" lighter vehicles, not that the employee "may perform duties" or "has duties" relating to such vehicles.  *See McCall v. Disabled American Veterans*, 723 F.3d 962, 966 (8th Cir. 2013) (holding that the plaintiff was not a covered employee because he only drove trucks with a Gross Vehicle Weight Rating above 10,000 pounds); *Aikins v. Warrior Energy Servs. Corp*, No. 6:13-CV-54, 2015 WL 1221255, at *5-7 (S.D. Tex. Mar. 17, 2015) (noting that it is an employee's "actual day-to-day job activities" that matter and concluding that to be a covered employee, "an employee must both (1) perform some work that affects the safety of operation of smaller vehicles, and (2) it must be part of the employee's 'duties' to do so") (internal quotation marks omitted)); *see also Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-411-BR, 2012 WL 1596726, at *5 (E.D.N.C. May 7, 2012) (discounting "the fact that other UPS employees may rarely, if ever, operate vehicles weighing at least 10,001 pounds" because "the

applicability of this element . . . involves individual-specific determinations"); *cf. McMaster*, 780 F.3d at 168-72 (holding that an employee who spent 49 percent of her workdays driving light trucks and 51 percent of her workdays driving heavy trucks was a "covered employee" entitled to overtime pay under the FLSA).

Guidance issued by the United States Department of Labor ("DOL") also indicates that the Technical Correction Act's small vehicle exception requires actual work on light vehicles.  A DOL Field Assistance Bulletin states that an employee of a motor carrier or motor private carrier is eligible for overtime pay in "any workweek in which the employee works, 'in whole or in part,' as a driver, driver's helper, loader or mechanic affecting the safety of operation of small vehicles on public highways in interstate or foreign commerce."  U.S. Dep't of Labor, Field Assistance Bulletin No. 2010-2 (2010).  Hill did not work on light vehicles during any workweek, so he was always subject to the Motor Carrier Act exception.

Hill cites *Hernandez v. Alpine Logistics, LLC*, No. 08-CV-6254T, 2011 WL 3800031 (W.D.N.Y. Aug. 29, 2011), for the proposition that drivers who work for a company with a mixed fleet of light and heavy trucks are entitled to overtime pay.  However, the *Hernandez* court relied on the fact that the plaintiffs actually drove trucks lighter than 10,000 pounds, not the mix of the company's fleet, in finding that they were entitled to overtime pay.  *Id.* at *5.

Hill also argues that B. Frank Joy must not have considered the Motor Carrier Act exception to apply to him because it paid him overtime on some occasions and, following his departure, advertised his position as "non-exempt."  Resp. Ex. D, Job Advertisement at 2.  But he points to no authority, nor is the Court aware of any, establishing that an employer's interpretation of the FLSA can alter employees' statutory right, or lack of right, to overtime pay. *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707 (1947) (holding that whether an

employee's job falls within the scope of the Motor Carrier Act exception is determined by his actual activities, not "by the name which may have been given to his position or to the work that he does").

Because Hill drove only trucks weighing more than 10,000 pounds, he is subject to the Motor Carrier Act exception, and B. Frank Joy's Motion is granted with respect to Hill's FLSA overtime claims. Notably, the Technical Corrections Act did not affect the MWHL, *see* Technical Corrections Act § 306, and the MWHL does not contain an equivalent light vehicle exception, *see* Md. Code Ann., Lab. & Empl. § 3-415, so there can be no dispute that the MWHL overtime requirement does not apply to Hill pursuant to the state law equivalent of the Motor Carrier Act exemption. Thus, B. Frank Joy is also granted summary judgment on Hill's MWHL overtime claim.

## III.     Straight-Time Compensation

Next, Hill argues that B. Frank Joy violated the FLSA and the MWPCL by failing to pay him for the non-overtime hours he spent loading and unloading dump trucks and for a portion of his travel time to and from job sites. B. Frank Joy counters by arguing that the FLSA does not provide a cause of action for such an unpaid "straight time" claim except through an overtime or minimum wage claim, and that Hill's "straight time" claim necessarily fails because he cannot establish either type of claim.

"The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage" for unpaid, non-overtime hours. *Avery v. Chariots For Hire*, 748 F. Supp. 2d 492, 501 (D. Md. 2010). The United States Court of Appeals for the Fourth Circuit has held in an FLSA case that, "[i]f the employee has been properly paid at or above minimum wage for all nonovertime hours under the

terms of the employment agreement and at a proper overtime rate for all overtime hours, then the employee[] must look to contract law for relief concerning any disagreements about the number of hours for which his or her salary was intended to compensate." *Monahan*, 95 F.3d at 1284.

As discussed above, Hill cannot assert an FLSA overtime claim, so the allegedly unpaid straight-time hours, even if they caused him to work more than 40 hours in any given week, do not also establish a claim for unpaid overtime under 29 U.S.C. § 207.   Nor does Hill have a minimum wage claim under 29 U.S.C. § 206.   Hill agrees with B. Frank Joy that, for each workweek, his pay divided by the number of hours he worked, even including the hours for which he alleges he was not paid at all, resulted in an hourly rate of pay greater than the minimum wage.   Under such circumstances, he has no viable minimum wage claim.   *See Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969) (concluding that there is no FLSA minimum wage violation so long as "each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate") (quoting *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 493 (2d Cir. 1960)); *Avery*, 748 F Supp. 2d at 501.   Because the alleged unpaid hours would not cause a violation of overtime or minimum wage provisions of the FLSA, 29 U.S.C. §§ 206, 207, B. Frank Joy's Motion is granted on Hill's claim for straight-time pay under the FLSA.

The Court notes, however, that Hill has properly alleged a claim for unpaid straight-time pay under the MWPCL, which provides a cause of action when an employer fails to pay "an employee all wages due for work that the employee performed before the termination of employment."  Md. Code Ann., Lab. & Empl. § 3-505(a).  B. Frank Joy has not sought summary judgment on this claim.

IV.    **Proposed Amendments**

Hill further argues that summary judgment should not be granted because he has a viable claim for unpaid wages and overtime pay under the DCMWA, and that, as a result of that viable claim, he remains a valid class representative under Rule 23.  At present, there is no DCMWA claim in the currently pending Amended Complaint, so any theoretically viable DCMWA claim does not provide a basis to deny summary judgment.

Hill proposes to amend his complaint again in two ways.  First, he asserts that he should be allowed to substitute another person as plaintiff in this action.  Second, he claims that he may amend his complaint again "as a matter of right" to add a claim for unpaid overtime under the DCMWA.  Resp. at 2-3.  Hill has not filed a motion to pursue either option.  In a related case before this Court, *Hill v. B. Frank Joy, LLC*, No. TDC-15-cv-1123, Hill has filed a Motion to Amend the Complaint, seeking to assert a DCMWA claim for unpaid overtime.

B. Frank Joy opposes both proposals.  It argues that Hill cannot substitute another plaintiff because upon a grant of summary judgment on his individual FLSA claim there would no longer be a justiciable claim.  B. Frank Joy further contends that if the Court grants summary judgment on the FLSA claim, it should refuse to exercise supplemental jurisdiction over any remaining state claims and the proposed DCMWA claim.

First, contrary to B. Frank Joy's contention, Hill is not barred from moving to amend the complaint to substitute another named plaintiff for the FLSA and MWHL overtime claims. Even when the named plaintiffs' claims are dismissed prior to any motion for class certification, courts permit substitution for the named plaintiffs.  *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006); *In re Thornburgh*, 869 F.2d 1503, 1508-09 (D.C. Cir. 1989).  "Unless jurisdiction never attached . . . or the attempt to substitute comes long after the claims of the

named plaintiffs were dismissed, substitution for the named plaintiffs is allowed." *Phillips*, 435 F.3d at 787 (internal citations omitted). Jurisdiction would not have attached if the named plaintiff never had standing in the first place. *See Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (holding that substitution of a new named plaintiff is not permissible when the dismissed named plaintiff never had standing). To have standing from the outset, Hill's suit had to present an actual "case or controversy in the Article III sense, that is, a real dispute between parties with tangible stakes in the outcome." *Walters*, 163 F.3d at 432 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). If Hill's suit "at least had colorable merit when begun, jurisdiction had attached," and substitution would be permitted even though Hill is no longer a suitable class representative. *Id.* Here, Hill had standing from the outset because he asserted a colorable claim for unpaid wages on behalf of a class, his FLSA claims and MWHL overtime claims have been rejected on the merits, and he continues to have a viable MWPCL claim for unpaid wages. Substitution of a new named plaintiff may therefore be permissible. *See Phillips*, 435 F.3d at 787; *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 2453202, at *7 (N.D. Cal. May 22, 2015) (holding that the dismissal of the plaintiff's FLSA claim as time-barred did not prevent the plaintiff from filing a motion to amend the complaint to substitute a new named plaintiff); *Field v. Am. Mortgage Exp. Corp.*, No. C-09-5972 EMC, 2011 WL 3354344, at *9 (N.D. Cal. Aug. 2, 2011) (allowing pre-certification substitution of named plaintiff after granting a motion for summary judgment against the original named plaintiff because the defendant was not a joint employer of the named plaintiff specifically).

B. Frank Joy's reliance on *Jastremski v. Safeco Insurance Cos.*, 243 F. Supp. 2d 743, 745 n.1 (N.D. Ohio 2003), and *Bickings v. NHS Human Services*, No. 13-2894, 2014 WL 307549, at

*4 (E.D. Pa. Jan. 27, 2014), is misplaced, as these cases do not address whether a named plaintiff may seek to substitute another person as the representative for the collective after his individual FLSA claim has been dismissed.  Consequently, Hill may file a motion to amend the complaint to substitute a new plaintiff into this action.  The Court does not decide at this time whether such a motion would be successful.

Second, Hill is incorrect to claim that he may amend his complaint for a second time as a matter of right to add a claim under the DCMWA.  B. Frank Joy has already submitted an answer to the Amended Complaint, so Hill must seek leave of the Court for any amendment.  Fed. R. Civ. P. 15(a).  Although Hill is not precluded from filing such a motion, because the Court's grant of summary judgment on the FLSA claim eliminates the only federal claim in this case, and the parties are not diverse, the Court could choose to decline to exercise supplemental jurisdiction over the remaining MWPCL claim and the proposed DCMWA claim.  *See* 28 U.S.C. § 1367(c) (stating that "district courts may decline to exercise supplemental jurisdiction" over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction"); *Waybright v. Frederick Cty.*, 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions gone, there may be the authority to keep [the case] in federal court . . . but there is no good reason to do so."); *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 527-28 (D. Md. 2006) (declining to exercise supplemental jurisdiction, after dismissing the plaintiff's FLSA claim, over related MWHL and MWPCL claims).  If, however, a new named plaintiff is substituted into the case, the FLSA, MWHL, and MWPCL claims may remain, in which case supplemental jurisdiction over a DCMWA claim would likely follow.  Because a motion for leave to amend the complaint to add a DCMWA claim is not clearly futile, the Court will grant leave to Hill to file such a motion within 15 days.

**CONCLUSION**

For the foregoing reasons, B. Frank Joy's Motion for Summary Judgment is GRANTED. Hill is granted 21 days to file a Motion for Leave to Amend the Complaint.  That Motion may seek either (1) to substitute a new named plaintiff or (2) to substitute a new named plaintiff and to add a claim under the DCMWA.  If Hill declines to file either motion, the Court will decline to exercise supplemental jurisdiction over any remaining state law claims, and the case will be dismissed.  A separate Order shall issue.


Date:  August 9, 2016                                    _____/s/_____
                                                         THEODORE D. CHUANG
                                                         United States District Judge