# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

MANUEL ALVAREZ-SOTO,
DARRYL REID and
CHARLES THOMAS,
*On Behalf of Themselves and All Others
Similarly Situated,*

      Plaintiffs,

      v.

B. FRANK JOY, LLC,
T. KENNETH JOY and
KEVIN JOY,

      Defendants.

Civil Action No. TDC-15-1120

## MEMORANDUM OPINION

Plaintiffs Manuel Alvarez-Soto, Darryl Reid, and Charles Thomas, former and current employees of Defendant B. Frank Joy, LLC ("BFJ"), have filed this civil lawsuit on behalf of themselves and others similarly situated against BFJ and two of BFJ's corporate officers, T. Kenneth Joy and Kevin Joy (the "Individual Defendants"). Plaintiffs allege that Defendants have violated their rights under federal and state law by failing to pay both straight time and overtime wages, refusing to allow Plaintiffs and other employees to take sick leave, and discriminating against Plaintiffs and other African American and Latino employees. The Second Amended Complaint asserts violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219 (2012); the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-431 (West 2016); the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509; the District of Columbia Minimum Wage Act

("DCMWA"), D.C. Code §§ 32-1001 to 32-1015 (West 2013); the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code §§ 32-1301 to 32-1312; the District of Columbia Accrued Sick and Safe Leave Act, as amended (the "D.C. Sick Leave Act"), D.C. Code §§ 32-131.01 to 32-131.17; 42 U.S.C. § 1981; and District of Columbia and Maryland common law. BFJ and the Individual Defendants have filed separate Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Individual Defendants' Motion is GRANTED, and BFJ's Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiffs are current and former employees of BFJ, a Maryland limited liability company that specializes in the installation, maintenance, and rehabilitation of underground infrastructure. Plaintiff Alvarez-Soto, who is Latino, worked as a laborer at BFJ between 2005 and 2015. Plaintiff Reid, who is African American, drove trucks for BFJ between 2005 and his retirement in 2016. Plaintiff Thomas, also African American, has worked at BFJ since 2008 and remains employed there. He is currently a driver operating trucks weighing less than 10,000 pounds. All three named Plaintiffs are residents of Maryland. Plaintiffs seek to bring this lawsuit on behalf of a class of current and former BFJ employees who have worked as construction workers, laborers, equipment operators, forepersons, flaggers, and truck drivers.

Defendant T. Kenneth Joy and Kevin Joy are corporate officers of BFJ. The Second Amended Complaint alleges that T. Kenneth Joy is the President and Chief Executive Officer of BFJ, but he claims that he serves only as Chairman of the Board and merely advises BFJ on business development and acquisition strategy. Kevin Joy is alleged to be the Vice President of BFJ, but he claims to hold only the position of Secretary of the Board. The Second Amended

Complaint does not describe the extent of the Individual Defendants' involvement in the day-to-day management of BFJ, including employee compensation, payroll, scheduling, and other personnel-related issues. Rather, it alleges only that the Individual Defendants knew or should have known of BFJ's alleged legal violations.

## I. Wage and Hour Claims

BFJ operates primarily out of a construction yard (the "Construction Yard") located in Hyattsville, Maryland. BFJ's employees report to the Construction Yard before leaving on company trucks for different work sites. Although the paid work day officially begins at 7:00 a.m., BFJ employees must report to the Construction Yard between 5:00 a.m. and 6:00 a.m., up to an hour and a half before departing for work sites, in order to load company trucks and construction vehicles with tools and equipment. Loading the trucks takes between 15 and 90 minutes each morning. After the trucks are loaded, truck drivers transport the construction workers and laborers to job sites located throughout the Washington, D.C. metropolitan area. When the daily work at the construction site ends, the truck drivers transport the construction workers and laborers back to the Construction Yard, where they unload the trucks and vehicles for 15 to 45 minutes.

Plaintiffs allege that BFJ has not been compensating employees for the time spent loading and unloading vehicles at the Construction Yard or for time spent traveling between the Construction Yard and the various job sites. According to the Second Amended Complaint, construction workers and laborers are not paid at all for time spent loading and unloading vehicles or for travel time. Truck drivers are compensated for only 30 minutes of travel time per day, even though the average amount of daily travel time is 60 minutes, and some job sites require more than an hour of travel time. In addition, although BFJ routinely requires employees

3

to work over 40 hours per week, BFJ fails to pay overtime wages of one and one-half times the employees' regular hourly rate of pay.

According to Plaintiffs, part of the reason BFJ fails to correctly compensate its workers is its failure to maintain an adequate timekeeping system. Instead of utilizing a time clock or other employee self-reporting system, the forepersons at each job site report time for all workers. However, forepersons often depart before the day's work is completed, and their reports are often inaccurate. Plaintiffs also allege that BFJ has retaliated against employees who complained about inaccurate time records, wages, or lack of overtime payments by demoting them, discharging them, and otherwise discriminating against them. Specifically, Thomas alleges that he was demoted after complaining that he was not receiving overtime pay. Plaintiffs also allege that they were denied use of sick leave, even though the BFJ Company Employee Handbook states that employees are entitled to sick leave.

## II. Discrimination Claims

Plaintiffs further assert that BFJ discriminates against African American and Latino workers on the basis of race. Alvarez-Soto alleges that a white foreman asked why Alvarez-Soto earns $13 per hour even though he "can't speak English." Decl. of Manuel Alvarez-Soto, Second Am. Compl. ("SAC") Ex. A ¶ 6, ECF No. 76-1 ("Alvarez-Soto Decl."). He claims that he was not allowed to apply for a driving position because he is Dominican and speaks English with an accent, and he further states that BFJ allowed his former co-workers to make fun of his English and treat him "like a second-class citizen." *Id.* ¶ 12. Reid alleges that a foreman cursed and yelled at him because he is African American. He asserts that he saw the foreman belittle Latino workers on the job, and that a BFJ fleet manager referred to Spanish-speaking employees as "spics." Decl. of Darryl Reid, SAC Ex. A ¶ 8, ECF No. 76-1 ("Reid Decl.").

4

Thomas alleges race discrimination based on the fact that when he complained about mistreatment, he lost his position to another African American employee who "does as he is told without question or concern for his fellow coworkers." Decl. of Charles Thomas, SAC Ex. A ¶¶ 2-3, ECF No. 76-1 ("Thomas Decl."). Thomas also asserts that after he had a vehicle accident at work, he "was drug tested and a point was added to my Joy license," while no action was taken against a white employee who "rear-ended a lady's car." *Id.* ¶ 6. Likewise, Thomas claims that an African American woman employee involved in a vehicle accident was subjected to discrimination when she was fired by BFJ for not submitting to an immediate drug test. Thomas has also heard of BFJ management using derogatory terms to refer to BFJ employees, including a white employee referred to as Julio because he "works like a Mexican." *Id.* ¶ 8.

## III.   Procedural History

This case was originally filed by Harry Hill, a former BFJ employee, against BFJ only and alleged violations of the FLSA, MWHL, and MWPCL. After Hill filed an Amended Complaint, the Court granted summary judgment to BFJ on the FLSA and MWHL claims because Hill was subject to the Motor Carrier Act exception to both statutes and was thus not protected by those laws. The Court allowed Hill to file a motion for leave to amend the Complaint to substitute a new named plaintiff and add a claim under the DCMWA.

The Second Amended Complaint went further, in that it added T. Kenneth Joy and Kevin Joy as defendants and expanded the claims to include causes of actions under the DCMWA, DCWPCL, D.C. Sick Leave Act, District of Columbia and Maryland common law, and 42 U.S.C. § 1981. The Court nevertheless accepted the Second Amended Complaint as the operative complaint, as well as declarations executed by each of the three new named Plaintiffs, which the Court deemed to be attachments to the Second Amended Complaint.

After BFJ and the Individual Defendants filed the pending Motions, Plaintiffs missed the deadlines to respond to the Motions by several weeks. On March 30, 2017, Plaintiffs filed an untimely memorandum of law in opposition to the Motions ("Opposition"), along with a Motion requesting that the Court consider the untimely filing.

## DISCUSSION

### I.    Untimely Filing

BFJ filed its Motion to Dismiss on January 31, 2017. Plaintiffs' Opposition was therefore due 14 days later, on February 14, 2017. The Individual Defendants filed their Motion to Dismiss on February 27, 2017, and Plaintiffs' Opposition was therefore due on March 13, 2017. Plaintiffs did not file their Opposition until March 30, 2017. In their "Motion for the Court to Consider Plaintiffs' Untimely Responses to the Motions to Dismiss," which Defendants have opposed, Plaintiffs explain that their Opposition was untimely because of a calendaring error.

Under the Federal Rules of Civil Procedure, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, the Court accepts Plaintiffs' representation of a calendaring error and concludes that the failure to respond to the Motions was the result of "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 391-92 (1993) (holding that "excusable neglect" may include "inadvertent delays" and is "not strictly limited to omissions caused by circumstances beyond the control of the movant"); *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996). In addition, the United States Court of Appeals for the Fourth Circuit has established a "strong policy that cases be decided on the merits." *United States v.*

*Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). Consequently, the Court will grant the Motion and will consider the untimely Opposition.

## II.     Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

On a Rule 12(b)(6) motion, Courts are permitted to consider documents attached to a complaint "so long as they are integral to the complaint and authentic." *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.,* 684 F.3d 462, 467 (4th Cir. 2012) (quoting *Philips v. Pitt Cty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)). Accordingly, the Court considers the Declarations deemed attached to the Complaint.

In their Motion, the Individual Defendants move to dismiss all claims alleged against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, on summary judgment under Rule 56. The Individual Defendants attach Declarations to their Motion in which they separately assert that they did not have authority to hire or fire Plaintiffs, had no role in personnel policies or payroll matters, and did not know of or authorize any discrimination against Plaintiffs. When facts outside the pleadings are considered on a motion to dismiss, a court must treat the motion as one for summary judgment. Fed. R. Civ.

7

P. 12(d).  Here, Plaintiffs argue that summary judgment is premature because Plaintiffs dispute the Individual Defendants' assertions, and discovery is necessary before any resolution of the claims.  In support of their position, Plaintiffs attach competing declarations disputing the Individual Defendants' factual assertions and a Rule 56(d) declaration by counsel  explaining the need for discovery.  Because the Court agrees that a motion for summary judgment is premature, it excludes the submitted declarations and construes the Individual Defendants' Motion as a motion to dismiss under Rule 12(b)(6).

### III.  B. Frank Joy, LLC

BFJ's Motion alleges that the Second Amended Complaint fails to allege sufficient facts to state plausible claims against BFJ for retaliation under the FLSA, violations of the DCWPCL and MWPCL relating to unlawful deductions, a violation of the D.C. Sick Leave Act, common law claims under District of Columbia and Maryland law, and violations of 42 U.S.C. § 1981 relating to race discrimination.  Plaintiffs argue that Defendants' characterizations of the defects in the Second Amended Complaint are "greatly exaggerated" and that Defendants' arguments are based on technicalities.  Opp'n at 2, ECF No. 90.

### A.  FLSA Retaliation

BFJ first asserts that Plaintiffs have failed to state a plausible claim of retaliation under the FLSA.  Under the FLSA anti-retaliation provision, it is unlawful for an employer covered by the FLSA:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding.

29 U.S.C. § 215(a)(3).  To establish a *prima facie* case of an FLSA retaliation claim, a plaintiff must show that (1) the plaintiff engaged in an activity protected by the FLSA, (2) the plaintiff

suffered an adverse action by the employer subsequent to or contemporaneous with the protected activity, and (3) a causal connection exists between the employee's activity and the employer's adverse action. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008).

The Second Amended Complaint alleges generally that BFJ retaliated against Plaintiffs for making complaints related to FLSA violations by "actually or constructively discharging and/or demoting employees who complained." SAC ¶ 84. Thomas specifically alleges that he was demoted after complaining to BFJ that he was not paid overtime. For purposes of resolving a motion to dismiss under Rule 12(b)(6), Thomas's allegation is sufficient. Thomas's claim adequately asserts that he engaged in protected activity by making a complaint to BFJ about overtime pay. *See Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 438 (4th Cir. 2012) (holding that intracompany complaints are protected activity under the FLSA). Demotion is plainly an adverse action, satisfying the second factor. *See Darveau*, 515 F.3d at 343 (stating that "a plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action that would have been materially adverse to a reasonable employee" and that "could well dissuade a reasonable worker" from making a complaint under the FLSA (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006))). Finally, drawing all inferences in Plaintiffs' favor, as is required at the Rule 12(b)(6) stage, the Court infers causation from the statement that Thomas was demoted "[a]fter complaining to [BFJ] that he was not being paid overtime." SAC ¶ 7. Accordingly, BFJ's Motion is denied as to Thomas's FLSA claim.

Alvarez-Soto and Reid, however, have not alleged sufficient facts to state a claim for FLSA retaliation. Neither Alvarez-Soto nor Reid alleges that he made an FLSA-related complaint or that he suffered a specific adverse action in response. The general allegation that

BFJ discharged or demoted "employees who complained" does not provide enough "factual context" to "nudge their claim from conceivable to plausible." *See Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)). Accordingly, BFJ's Motion is granted as to the FLSA retaliation claims of Alvarez-Soto and Reid.[1]

## B.    DCWPCL and MWPCL

Count V of the Second Amended Complaint alleges that BFJ failed to pay Plaintiffs "unpaid wages" and made "unlawful deductions" in violation of the DCWPCL. Specifically, Plaintiffs allege that they were not paid "their promised and required wage rate for all hours they worked" and that BFJ "made unlawful deductions from the earned wages of the Class Plaintiffs and all others similarly situated, and thus failed to pay them their promised and required wage rate for all hours they worked, in violation of § 32-1302 of the DCWPCL." SAC ¶¶ 111-12. Count VI likewise asserts that BFJ violated the MWPCL based on "unpaid wages" and "unlawful deductions" by failing "to timely pay" Plaintiffs "their promised and required wage rate for all hours they worked" in violation of section 3-502 of the MWPCL and by making "unlawful deductions from the earned wages of Class Plaintiffs" and thus failing "to pay them

---

[1] Because no class has yet been certified under Rule 23, only the named Plaintiffs' individual claims are presently before the Court. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1304 (4th Cir. 1978) ("It is the actual certification of the action as a class action under [Rule 23] which alone gives birth to the class as a jurisprudential entity, changes the action from a mere individual suit with class allegations into a true class action . . . and provides that sharp line of demarcation between an individual action seeking to become a class action and an actual class action." (footnote omitted) (quoting *Satterwhite v. City of Greenville*, 557 F.2d 414, 425 (5th Cir. 1977) (Gee, J., dissenting))); *Lloyd v. Gen. Motors Corp.*, 575 F. Supp. 2d 714, 723 (D. Md. 2008) (dismissing the claims of individual plaintiffs in a putative class action for failure to state a claim); *see also Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1257 n.4 (W.D. Okla. 2012) (stating that "[u]ntil issues of class certification are presented to, and addressed by, the Court under Rule 23, [Plaintiffs] are not representatives of any other parties" and each "must meet its own procedural burden under Rule 12(b)(6) and the pleading standards of *Twombly* and *Iqbal*").

their promised and required wage rate" in violation of section 3-503 of the MWPCL. BFJ does not challenge the DCWPCL and MWPCL claims for unpaid wages but asserts that Plaintiffs have failed to assert sufficient facts to state claims for unlawful deductions under the DCWPCL or MWPCL.

Subject to certain exceptions not relevant here, section 32-1302 of the DCWPCL requires that an employer "pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month." D.C. Code § 32-1302. The statute defines "wages" as "all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation." *Id.* § 32-1301(3).

The MWPCL requires an employer to set regular pay periods and pay each employee at least every two weeks or twice a month, and states that "[a]n agreement to work for less than the wage required under this subtitle is void." Md. Code Ann., Lab. & Empl. § 3-502(a), (f). A "wage" is defined as "all compensation that is due to an employee for employment." *Id.* § 3-501(c). The MWPCL further states that an employer "may not make a deduction from the wage of an employee unless the deduction is" pursuant to a court order, authorized in writing by the employee, allowed by the Commissioner of Labor and Industry because the employee has received full consideration for the deduction, or was "otherwise made in accordance with any law or any rule or regulation issued by a governmental unit." *Id.* § 3-503. The DCWPCL and MWPCL each provide a private right of action. *See* D.C. Code § 32-1308(a); Md. Code Ann., Lab. & Empl. § 3-507.2(a).

To the extent that Counts V and VI assert claims under the DCWPCL and MWPCL under a theory of unlawful deductions, Plaintiffs have not offered sufficient facts to support

those claims. The Second Amended Complaint does not allege any facts that describe the deductions in question or support the conclusion that they were unlawful. Although Rule 8 does not require detailed allegations, the Second Amended Complaint does not provide even the limited detail that would be sufficient to state a plausible claim based on unlawful deductions. *Cf. Diaz v. Corp. Cleaning Sols., LLC*, No. DKC-15-2203, 2016 WL 1321419, at *4 (D. Md. April 5, 2016) (holding that the plaintiff stated an MWPCL claim for unlawful deductions by alleging that defendants "deducted monies for work uniforms" without having obtained consent or written authorization); *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 142 (D.D.C. 2011) (describing the complaint, which sufficiently alleged a DCWPCL unlawful deduction claim by asserting that "the defendants took unexplained deductions from the plaintiff's wages, including late fees, fines for calling in sick, and stage fees"). Accordingly, to the extent that Plaintiffs seek to assert unlawful deduction claims under the DCWPCL and MWPCL in Counts V and VI, those claims are dismissed. The unpaid wages claims alleged in Counts V and VI under those statutes, which BFJ does not challenge, remain intact.

### C. D.C. Sick Leave Act

In Count VII, Plaintiffs assert a violation of the D.C. Sick Leave Act, which provides that "[a]n employer with 100 or more employees shall provide for each employee not less than one hour of paid leave for every 37 hours worked, not to exceed 7 days per calendar year." D.C. Code § 32-131.02(a)(1). The leave may be used for certain specified absences including obtaining medical care, caring for sick family members, and seeking services related to domestic violence or sexual abuse. *See id.* § 32-131.02(b). Paid leave under the D.C. Sick Leave Act "shall accrue in accordance with the employer's established pay period," and an employee "may begin to access paid leave after 90 days of service with his or her employer." *Id.* § 32-

131.02(c)(1). The employee seeking leave must submit a written request in advance, *id.* § 32-131.03, and an employer may require that paid leave of three consecutive days or more be supported by a reasonable certification, *id.* § 32-131.04.

BFJ asserts that the Second Amended Complaint does not state a plausible claim for relief under the D.C. Sick Leave Act because it does not allege that Plaintiffs were eligible for sick leave or that they complied with the notice requirements. The Second Amended Complaint alleges that even though Plaintiffs had accrued and were entitled to take sick leave, they were denied the use of sick leave benefits. Plaintiffs further allege that they were promised at the time of hire that they would be given sick leave benefits, and that a September 1998 B. Frank Joy Company Employee Handbook provided for such benefits, but that African American and Latino workers were prevented from taking such leave, while white employees were not. Drawing all inferences in favor of Plaintiffs, these allegations are sufficient to support the inference that each Plaintiff was eligible to take sick leave and properly sought to take such leave, but was unjustifiably barred from doing so, in violation of the D.C. Sick Leave Act. BFJ cites no authority for the proposition that Plaintiffs are required to plead explicitly that they complied with the notice requirements, nor is the Court aware of any. Accordingly, BFJ's Motion is denied as to Count VII. *See Hall*, 846 F.3d at 765 (stating that on a motion to dismiss, a court must construe the complaint liberally and "draw all reasonable inferences in favor of the plaintiff").

### D.  State Common Law Claims

In Counts VIII-XI, the Second Amended Complaint also alleges common law claims for breach of contract and unjust enrichment under District of Columbia and Maryland law. According to Plaintiffs, BFJ breached oral employment contracts with them by failing to pay

regular and overtime wages. Plaintiffs further allege that BFJ was unjustly enriched because it increased the profits it received from its government contracts by paying Plaintiffs less than the prevailing wage rate agreed to in those contracts. BFJ argues that these state common law claims are preempted by federal law.

The Fourth Circuit has recognized that "Congress prescribed exclusive remedies in the FLSA for violations of its mandates." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007). Accordingly, state claims are preempted by the FLSA "where those claims have merely duplicated FLSA claims." *Id.*; *see also Bouthner v. Cleveland Constr. Inc.*, No. RDB-11-244, 2011 WL 2976868, at *6-7 (D. Md. July 21, 2011) (holding that a *quantum meruit* claim based on unpaid regular and overtime wages was preempted by the FLSA). While Plaintiffs' breach of contract and unjust enrichment claims do not explicitly reference the FLSA, they seek "the value of the regular time and overtime wages" sought in the FLSA claim. *Bouthner*, 2011 WL 2976868, at *7. Thus, in asserting their breach of contract and unjust enrichment claims, Plaintiffs "must rely upon the FLSA as the source of their claim[s] because the FLSA establishes minimum wage and overtime requirements." *Id.* Because Plaintiffs' state common law claims essentially duplicate their claims for unpaid regular and overtime wages in violation of the FLSA, they are preempted. *See Anderson*, 508 F.3d at 193 (dismissing as preempted state common law claims that "depend on establishing that [the defendant] violated the FLSA" and "essentially require[d] the same proof as claims asserted under the FLSA itself"); *see also, e.g.*, *Bouthner*, 2011 WL 2976868, at *7; *Helm v. Alderwoods Grp.*, 696 F. Supp. 2d 1057, 1076 (N.D. Cal. 2009) (holding that the FLSA "preempts common law claims that seek remedies for rights protected by the FLSA (such as minimum wage and overtime pay)"); *Morrow v. Green Tree Servicing, LLC*, 360 F. Supp. 2d 1246, 1252 (M.D. Ala. 2005) (dismissing as preempted

breach of contract and unjust enrichment claims "based largely, if not exclusively, on the FLSA").

BFJ further argues that Plaintiffs' unjust enrichment claims are preempted by the Davis-Bacon Act ("DBA"), 40 U.S.C. §§ 3141-3148 (2012). The Davis-Bacon Act, which requires that laborers and mechanics working on federally funded construction projects be paid no less than the prevailing wage in the locality where the work was performed, 40 U.S.C. § 3142, establishes an extensive administrative scheme for the recovery of unpaid wages rather than a private right of action. *See Johnson v. Prospect Waterproofing Co.*, 813 F. Supp. 2d 4, 8-9 (D.D.C. 2011). Courts have held that where plaintiffs' "state-law claims are indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA," those claims are preempted because allowing a private common law action "aimed at enforcing those wage schedules would be inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting *Davis v. United Airlines, Inc.*, 575 F. Supp. 677, 680 (E.D.N.Y. 1983)). Plaintiffs, who do not allege that they have exhausted their administrative remedies under the DBA, may not "get around the administrative prerequisites of the Act simply by dressing up their claim in new language and asserting that it arises under state law." *Johnson*, 813 F. Supp. 2d at 9-10 (dismissing as preempted state law *quantum meruit* claims arising from the defendant's failure to pay the prevailing Davis-Bacon wage rates). *See also Johnson v. Sys. Connection of Md.*, No. JKB-16-0630, 2016 WL 4124214, at *3 (D. Md. Aug. 2, 2016) ("[F]ederal courts have repeatedly rejected attempts by litigants to avert the administrative requirements of the Davis-Bacon Act by cloaking inherently Davis-Bacon claims in the garb of state law.").

Here, Plaintiffs allege that BFJ was unjustly enriched because it "increased the profitability of its government contracts tied to prevailing market wages by paying workers less than the contracted-amount for wages and keeping the difference for the company." SAC ¶¶ 145, 163. Although they do not specifically reference the DBA, Plaintiffs' reference to "government contracts tied to prevailing market wages" is undoubtedly an indirect reference to the DBA that illustrates that the unjust enrichment claim is based on the failure to pay wage rates in accordance with that statute. Under such circumstances, the DBA preempts the state common law claim. *See Johnson*, 2016 WL 4124214, at *2 (finding that the complaint's claim of a failure to pay "scale wages" was a reference to the requirements of the DBA and was thus preempted). Accordingly, to the extent Plaintiffs' common law unjust enrichment claims arise from the failure to pay Davis-Bacon Act prevailing wage rates, they are also preempted by the DBA. BFJ's Motion is therefore granted as to the state common law claims.

### E.    42 U.S.C. § 1981

In addition to their wage- and benefits-related claims, Plaintiffs allege that BFJ discriminated against African American and Latino employees by treating them differently than white employees, in violation of 42 U.S.C. § 1981. 42 U.S.C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The statute defines the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions

that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). The substantive elements of a *prima facie* case of employment discrimination under § 1981 are the same as for a claim brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 133 n.7 (4th Cir. 2002); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 673 (D. Md. 2013).

Although Plaintiffs need not allege facts sufficient to establish a *prima facie* case under Title VII, they nevertheless must plead facts sufficient to support a reasonable inference that an alleged adverse employment action was motivated by bias or discrimination. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015). Plaintiffs' generally assert that African American and Latino workers (1) are subjected to derogatory remarks by white managers and workers; (2) receive lower hourly wages for the same jobs, and received smaller wage increases, than white employees; (3) are denied sick leave and other benefits received by white employees; (4) receive harsher discipline in that they, but not white employees, are subjected to drug tests after vehicle accidents; and (5) are denied promotions when they complain about discrimination.

BFJ argues that Plaintiffs' allegations are insufficient to state a plausible claim for relief. For the most part, the Court agrees. Although Plaintiffs describe several instances in which BFJ personnel used derogatory names to refer to African American or Latino employees, in the absence of a hostile work environment claim, such facts do not, by themselves, state a claim for discrimination if unlinked to a particular adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375-76 (4th Cir. 2004) (stating that in a discrimination case "the existence of some adverse employment action" that "adversely affects the terms, conditions, or benefits of the plaintiff's employment" is required). *Dallas v. Giant Food, Inc.*, 187 F. Supp. 2d

505, 508 (D. Md. 2002). With respect to wage discrimination, no Plaintiff alleges specific facts showing that he was paid less than any similarly situated white employee, or that the difference was the result of race discrimination. Although Alvarez-Soto alleges that "probably 99%" of the employees in the Gas or Sewer Department are white and that BFJ pays employees in that Department more than employees in other departments, Alvarez-Soto Decl. ¶ 11, he does not allege facts showing that the work performed in that Department is comparable to his own work such that the pay should be the same. *See Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 912 (4th Cir. 1989) (stating that plaintiff must demonstrate that white employees were "similarly situated" for the purpose of "comparing wages").

Likewise, although Plaintiffs have alleged that they sought and were denied sick leave, *see supra* Part III.C, they offer no specific facts to show that any similarly situated white employee sought and was granted sick leave. The general claim that minority employees are denied promotions when they complain about discrimination is likewise unsupported by specific factual allegations. Thomas alleges in his Declaration that he was demoted, but he acknowledges that the employee who replaced him was also African American.

Plaintiffs provide sufficient facts relating to two claims under § 1981. First, Alvarez-Soto has stated a claim for failure to hire or promote based on his description in his Declaration of an episode in which BFJ refused to allow him to apply for a driver position for which he believed he was qualified because he is Dominican and speaks broken English. Drawing all inferences in favor of Alvarez-Soto, the Court concludes that the BFJ manager's cursing and reference to Alvarez-Soto's English abilities, coupled with the broader evidence of derogatory statements made against Latino employees, support an inference of discrimination for purposes of a motion to dismiss. *See McNairn v. Sullivan*, 929 F.2d 974, 977 & n.6 (4th Cir. 1991)

18

(stating that a failure to promote claim requires that the plaintiff applied for the position, was qualified, and was rejected "under circumstances giving rise to an inference of unlawful discrimination"). Second, Thomas has stated a claim of disparate treatment relating to discipline. Thomas asserts that he was drug-tested and assessed "a point" against his driving record when he got into a vehicle accident, while a white employee who rear-ended another car was not subjected to drug testing or penalized in his driving record. Thomas Decl. ¶ 6. Thomas further alleges that an African American woman employee was told to submit to a drug test after a vehicle accident and was then terminated when she refused. Although not particularly detailed, these facts, when combined with the facts showing racially hostile statements by BFJ managers to minority employees, are sufficient to state a claim by Thomas for race discrimination under § 1981.

Accordingly, the Court denies BFJ's Motion to Dismiss the § 1981 claim to the extent to alleges a failure to hire or promote Alvarez-Soto to the driver position and alleges discriminatory discipline against Thomas. The remaining allegations of race discrimination under § 1981 are dismissed.

## IV. The Individual Defendants

### A. Wage Claims and Retaliation

The Individual Defendants assert that the FLSA overtime and other wage-related claims, as well as the FLSA retaliation claim, must be dismissed because they do not qualify as "employers" under the relevant statutes. In order to state a claim under the FLSA, the plaintiff must allege facts that, if true, establish that the defendant is the plaintiff's "employer" within the meaning of each statute. *See Kerr v. Marshall Univ. Bd. of Govs.*, 824 F.3d 62, 83 (4th Cir. 2016). The FLSA defines "employer" as "any person acting directly or indirectly in the interest

of an employer in relation to an employee," 29 U.S.C. § 203(d), which includes "those with managerial responsibilities and substantial control of the terms and conditions of the work of employees," *Kerr*, 824 F.3d at 83 (alteration omitted) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). Courts determine whether a person or entity is an "employer" within the meaning of the FLSA by applying the "economic reality" test, which considers "whether the employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 139 (2d Cir. 1999)).

The Second Amended Complaint alleges generally that T. Kenneth Joy and Kevin Joy were "employers" within the meaning of the FLSA and the identified District of Columbia and Maryland wage laws and "had knowledge of the matters set forth" in the Second Amended Complaint "regarding, at minimum, [BFJ's] policies, procedures and actions." SAC ¶¶ 14, 18. For each count, the Second Amended Complaint states that "[b]y virtue of their respective roles as [BFJ's] corporate officers and superior knowledge of [BFJ's] operations which was or should have been derived from their positions," the Individual Defendants "authorized, assented to, were aware, or should have been aware of" each violation and "failed to take action to address" each violation. *E.g.*, *id.* ¶¶ 80-81.

These allegations are insufficient to establish, even for purposes of a Motion to Dismiss, that the Individual Defendants were "employers" within the meaning of the FLSA. "[A]n individual's status as a high-level corporate shareholder or officer does not automatically impart 'employer' liability to that individual." *Whyte v. PP&G, Inc.*, No. WMN-13-2806, 2015 WL 3441955, at *3 (D. Md. May 26, 2015) (quoting *Pearson v. Prof'l 50 States Prot.*, No. 09-RDB-

3232, 2010 WL 4658188, at *10 (D. Md. Sept. 15, 2014)). The allegation that the Individual Defendants' had knowledge of FLSA violations does not satisfy the "economic reality" test, which focuses on whether the worker is economically dependent on the putative employer, and accordingly requires the actual authority to hire and fire employees, control conditions of employees or work schedules, determine the rate or method of payment, or maintain employment records. *Kerr*, 824 F.3d at 83. No one factor is dispositive, but where, as here, the complaint has "utterly failed to allege any indicia" of "control over the conditions" of employment or "authority to terminate," the allegations are insufficient to state an FLSA claim. *Id.* The FLSA overtime and FLSA retaliation claims against the Individual Defendants will therefore be dismissed.

The DCMWA, DCPWCL, MWHL, and MWPCL also require a showing that the defendant is an "employer." *Thompson*, 779 F. Supp. 2d at 146 (DCMWA and DCWPCL); *Watkins v. Brown*, 173 F. Supp. 2d 409, 415-16 (D. Md. 2001) (MWPCL); *Newell v. Runnels*, 967 A.2d 729, 771 (Md. 2009) (MWHL). Under the MWHL, DCMWA, and DCWPCL, courts use the same "economic reality" test applicable to the FLSA to determine whether a defendant is an "employer." *Wilson v. Hunam Inn, Inc.*, 126 F. Supp. 3d 1, 5 (D.D.C. 2015) (stating that because the definition of "employer" under the DCMWA is "nearly identical" to the FLSA definition, "courts construe the federal and local statutes coterminously for purposes of determining who is liable as an employer"); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 n.2 (D.D.C. 2010) ("Because the DCWPCL and FLSA contain nearly identical provisions with respect to employers liability, the DCWPCL is to be construed consistently with the FLSA."); *Newell*, 967 A.2d at 772-73 (applying the "economic reality" test to determine whether the defendant is an employer under both the FLSA and the MWHL). The claims against the

Individual Defendants under these statutes therefore rise and fall with the FLSA claims and are likewise dismissed.

The MWPCL defines an "employer" as "any person who employs an individual." Md. Code Ann., Lab. & Empl., § 3-501(b). This definition is "narrower" than the definition of employer under the FLSA, in that it does not include individuals who act "indirectly in the interest of an employer." *See Hall*, 846 F.3d at 775 n.10. Because Plaintiffs have not sufficiently alleged that the Individual Defendants were "employers" under the broader FLSA definition, the Court concludes that the allegations are likewise insufficient to state a claim that the Individual Defendants were "employers" who violated the MWPCL. Accordingly, the Court will grant the Motion as to the MWPCL claim against the Individual Defendants.

### B. D.C. Sick Leave Act

The Individual Defendants seek dismissal of the D.C. Sick Leave Act claim against them because the D.C. Sick Leave Act does not impose individual liability. The Court agrees. The D.C. Sick Leave Act defines "employer" as "a legal entity (including a for-profit or nonprofit firm, partnership, proprietorship, sole proprietorship, limited liability company, association, or corporation), or any receiver or trustee of an entity . . . who directly or indirectly or through an agent or any other person, including through the services of a temporary services or staffing agency or similar entity, employs or exercises control over the wages, hours, or working conditions of an employee." D.C. Code § 32-131.01(3)(A). This definition does not contemplate that an individual would be deemed to be an employer, in contrast to the DCMWA and DCWPCL, which include the terms "individual" and "person" in the definition of "employer." *See* D.C. Code § 32-1002(3); D.C. Code § 32-1301(1B). Indeed, the D.C. Sick Leave Act's recognition that the "legal entity" employer may act "through an agent *or any other*

*person*" illustrates that such persons, even in supervisory or managerial roles, are not personally subject to liability as an "employer." *See* D.C. Code § 32-131.01(3)(A) (emphasis added). Thus, Plaintiffs cannot state a claim against the Individual Defendants under the D.C. Sick Leave Act. The Individual Defendants' Motion is granted as to that claim.

### C. State Common Law Claims

Because the state common law claims are preempted by federal law, they are dismissed as to both BFJ and the Individual Defendants. *See supra* Part III.D.

### D. 42 U.S.C. § 1981

The Individual Defendants also seek dismissal of the discrimination claims under 42 U.S.C. § 1981. The Second Amended Complaint alleges that the Individual Defendants knew or should have known that their colleagues, subordinates, and employees engaged in a pattern or practice of discriminatory conduct against African American and Latino workers. Individuals within a company cannot be liable under § 1981 unless "they intentionally cause an employer to infringe the rights secured by section 1981." *Luy v. Balt. City Police Dep't*, 326 F. Supp. 2d 682, 688 (D. Md. 2004) (internal alterations omitted). "To make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action, and the claim must be predicated on the actor's personal involvement." *Hawthorne v. Va. State. Univ.*, 568 F. App'x 203, 204-05 (4th Cir. 2014) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (alterations omitted); *see also Brown v. Balt. Police Dep't*, No. RDB-11-0136, 2011 WL 6415366, at *8 (D. Md. Dec. 21, 2011) (dismissing a § 1981 claim against the police commissioner because there were no allegations that the commissioner "intentionally and personally participated in Plaintiff's deprivation of rights"). The allegation that the Individual Defendants knew or should have

known of ongoing discrimination falls short of that standard. *See Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 483 (D. Md. 2002) (granting summary judgment to defendants where plaintiffs alleged only "that the individual defendants were aware of racial problems and graffiti in the workplace after they occurred and did not respond properly," and there was no evidence that the individual defendants "directed, participated in or even approved of intentional discrimination"). The Individual Defendants' Motion is granted as to the § 1981 discrimination claim.

## V.    Leave to Amend

Defendants contend that the dismissal of any claims should be with prejudice. However, the Second Amended Complaint represents the initial pleading of the FLSA retaliation, DCWPCL, DCMWA, D.C. Sick Leave Act, and § 1981 claims. The Court cannot conclude "to a certainty" that, given the opportunity to amend, Plaintiffs will be unable to cure any of the pleading deficiencies identified above. *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) (stating that plaintiffs must be given "every opportunity to cure a formal defect in his pleading" unless it "appears to a certainty that the plaintiff cannot state a claim" (quoting 5A Charles Allen Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1357 (2d ed.1990))).

Because discovery has not yet begun in this case and the prejudice to Defendants is therefore limited, the Court will grant Plaintiffs **14 days** to submit a motion for leave to amend the complaint. Any proposed amendments must be limited to adding new factual allegations relating to the FLSA retaliation claims, the DCWPCL and MWPCL claims based on unlawful deductions, claims under 42 U.S.C. § 1981 relating to race discrimination, and the claims against the Individual Defendants under the FLSA for unpaid wages and retaliation, the DCMWA, the DCWPCL, the MWHL, the MWPCL, or 42 U.S.C. § 1981. The Motion must comply with Local

Rule 103.6 and must include specific factual allegations pertaining to each Plaintiff sufficient to meet the federal pleading standards for each claim. Plaintiffs are not permitted to add new parties or causes of action at this time. If Plaintiffs file a motion for leave to amend the complaint, Defendants are directed to respond within **14 days** of the date it is filed.

The claims against all Defendants under state common law, and the claims against the Individual Defendants under the D.C. Sick Leave Act, cannot be cured through amendment and are dismissed with prejudice.

Because leave to amend has been granted, the Court will deny the request to strike class claims as premature.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for the Court to Consider Plaintiffs' Untimely Responses to the Motions to Dismiss is GRANTED.

The Individual Defendants' Motion to Dismiss is GRANTED, and BFJ's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Both Motions are granted as to Count VIII (breach of contract under District of Columbia law), Count IX (unjust enrichment under District of Columbia law), Count X (breach of contract under Maryland law), and Count XI (unjust enrichment under Maryland law), which are dismissed with prejudice as to all Defendants.

The Individual Defendants' Motion is granted as to Count VII (D.C. Sick Leave Act) which is dismissed with prejudice as to the Individual Defendants only. The Individual Defendants' Motion is also granted as to Count I (FLSA overtime), Count II (FLSA retaliation), Count III (DCMWA), Count IV (MWHL), Count V (DCWPCL), Count VI (MWPCL), and Count XII (§ 1981), which are dismissed without prejudice as to the Individual Defendants.

BFJ's Motion is granted as to the claims by Alvarez-Soto and Reid in Count II (FLSA retaliation), the unlawful deduction claims in Count V (DCWPCL) and Count VI (MWPCL), and claims for discrimination under § 1981 other than Alvarez-Soto's failure to promote or hire claim and Thomas's discriminatory discipline claim. These claims are dismissed without prejudice as to BFJ. BFJ's Motion is denied as to all other claims.

Plaintiffs may file a Motion for Leave to Amend the Complaint within **14 days**. A separate Order shall issue.

Date: June 23, 2017

THEODORE D. CHUANG
United States District Judge